UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOHN FORNAH                                      CIVIL ACTION

v.                                               NO. 16-14354

TETRA APPLIED TECHNOLOGIES, LLC, ET AL.          SECTION "F"

ORDER AND REASONS

Before the Court is Schlumberger Technology Corporation's motion for summary judgment. For the reasons that follow, the motion is GRANTED.

**Background**

This personal injury case arises from an offshore accident during a coiled tubing operation decommissioning a well on a plug and abandon project in which the plaintiff alleges he was injured as a result of being the only rigger assigned to guide various hydraulic hoses, which were metal reinforced, filled with heavy viscous fluids, and suspended overhead by crane.

In 2015, as part of plugging and abandonment efforts, Chevron Corporation hired Schlumberger Technology Corporation to perform coiled tubing wellbore cleanout in the Bay Marchand Field. Chevron U.S.A. Inc. owned a fixed platform there on the outer continental shelf in the Gulf of Mexico, approximately five miles off the coast

of Louisiana. The Chevron-Schlumberger contract provides that Schlumberger is an independent contractor:

> The Work provided by [Schlumberger] [is] as an independent contractor, and [Schlumberger] and the members of Contractor Group are not employees, agents or representatives of [Chevron] or Company Group. [Schlumberger] has complete control, supervision and direction over its equipment and personnel, and over the manner and method of performance of the Work. Any instructions or directions of any kind given by [Chevron] do not relieve [Schlumberger] of its duties and obligations as an independent contractor.

Tetra Applied Technologies, LLC provided a crew for plugging and abandoning services. Pursuant to Tetra's Master Services Contract with Chevron, Tetra was also an independent contractor of Chevron:

> The Services are provided by [Tetra] as an independent contractor, and [Tetra] and the members of the Contractor Group are not employees, agents or representatives of [Chevron] or Company Group. [Tetra] has complete control, supervision and direction over its equipment and personnel, and over the manner and method of performance of the Services.

Another Chevron independent contractor, Alliance Offshore, L.L.C., owned and operated a liftboat adjacent to the platform, M/V MISS LYNNE, and operated the crane being used to lift and move the hoses in Schlumberger's coiled-tubing job as part of Chevron's plug and abandonment effort.[1] The plug and abandonment work for Chevron was

---

[1] Schlumberger's coiled tubing unit was positioned on the liftboat.

conducted 24 hours each day, with a day and night shift. Schlumberger provided a six person crew, consisting of a supervisor and two assistances for each 12 hour shift. According to Schlumberger, this crew size was standard for the type of work and equipment it provided.

John Fornah worked for Tetra as a rigger. He had received training in rigging. As a rigger, his job duties included handling hoses. He took direction from his Tetra supervisor, Michael Bergeron, in performing his duties, which included handling hoses. According to Schlumberger General Field Specialist Chadwick Bernard, who was the overall supervisor onsite for Schlumberger's portion of the Chevron work, as was customary, the liftboat and Tetra crew assisted with overall operations provided to Chevron, but no Schlumberger employee directed or supervised the activities of the Tetra crew.[2]

Mr. Fornah claims that on September 15, 2015, he injured his neck, back, and shoulder after being instructed by his Tetra supervisor to guide a tubing hose during a crane lift. He attempted to perform this task by himself because other Tetra co-workers were busy and he did not see anyone available to help him.

---

[2] Similarly, Mr. Fornah himself testified that his Tetra supervisor, Michael Bergeron, told him in the meeting before his shift that he was responsible for handling the hoses.

More specifically, according to Fornah, prior to beginning the September 15, 2015 night shift, during a safety meeting, Tetra supervisor Bergeron instructed him to handle the hoses. Fornah was positioned on the deck of the platform. At least three Tetra employees were also on the platform's deck, five to seven feet away, performing various tasks as directed by their Tetra supervisor, who came and went on the platform. No Schlumberger supervisor or employees were on the platform in Fornah's vicinity. The Alliance-operated crane, located on an adjacent liftboat, lifted Schlumberger's coiled tubing injector head into position. Fornah said that, acting alone, he jerked an attached hose to get it untangled from scaffolding and felt a pain in his back and shoulder.

Fornah continued to work, and worked two additional hitches. Two days after that September 15 incident, he reported that he was injured. During the Chevron work, no one reported to Schlumberger any incident or injury to a Tetra employee. On September 1, 2016, Fornah sued Tetra Applied Technologies, LLC, Alliance Offshore, L.L.C., the M/V CHARLESTON (f/k/a M/V MISS LYNNE), Schlumberger Technology Corporation,[3] and Chevron U.S.A. Inc. Fornah seeks to

---

[3] On November 9, 2016, Fornah amended his complaint, naming the correct Schlumberger entity as Schlumberger Technology Corporation.

4

recover maintenance and cure under general maritime law and also alleges Jones Act negligence on the part of his employer, Tetra; he also alleges unseaworthiness of the vessel, as well as negligence claims under general maritime law against Alliance (for failing to stop an unsafe lift operation), Schlumberger (for failing to provide a full coiled tubing crew and for negligent supervision), and Chevron.[4]  Schlumberger now moves for summary judgment dismissing the plaintiff's claims.

I.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law.  No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

---

[4]  The Court has been informally advised that Fornah has settled his claims against Chevron, Alliance, and Tetra.

The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. Id. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987); Fed. R. Civ. P. 56(c)(2). "[T]he nonmoving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007)(internal quotation marks and citation omitted). Ultimately, "[i]f the evidence is merely colorable . . . or is not significantly probative," summary judgment is appropriate. Anderson, 477 U.S. at 249 (citations omitted); King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994) ("Unauthenticated documents are improper as summary judgment evidence.").

Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In deciding

whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. Scott v. Harris, 550 U.S. 372, 378 (2007). Although the Court must "resolve factual controversies in favor of the nonmoving party," it must do so "only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Antoine v. First Student, Inc., 713 F.3d 824, 830 (5th Cir. 2013)(internal quotation marks and citation omitted).

II.

A. OCSLA Choice of Law

Fornah's alleged injuries occurred on a fixed platform in federal waters on the Outer Continental Shelf. It is undisputed that federal jurisdiction is predicated on the Outer Continental Shelf Lands Act (OSCLA), 43 U.S.C. § 1331 et seq.[5] Once OCSLA jurisdiction is established, as it is here, the Court turns to the

---

[5] The Outer Continental Shelf Lands Act established the Outer Continental Shelf as a federal enclave. 43 U.S.C. § 1333(a)(1). In so doing, Congress broadly conferred on the federal courts jurisdiction to hear claims arising out of or related to oil production on the Outer Continental Shelf. Id. at § 1349(b); Barker v. Hercules Offshore, Inc., 713 F.3d 208, 213 (5th Cir. 2013)(The OCSLA "asserts exclusive federal question jurisdiction over the OCS by specifically extending '[t]he Constitution and laws of the civil and political jurisdiction of the United States...[to the OCS].").

statute's choice of law provision to determine the law applicable to particular claims.

OCSLA calls for federal law to apply to all claims arising out of oil and gas production activities on the Outer Continental Shelf. 43 U.S.C. § 1333. OCSLA federalizes the law of the adjacent state when it is "applicable and not inconsistent with...other federal laws and regulations." Id. This means that state law, as borrowed federal law, will be applied only when already extant federal law leaves a void or gap in coverage:

> State law is called on as applicable where it is necessary to fill federal voids and where state law supplemented gaps in the federal law. Where there is a federal law or procedural practice which adequately cope(s) with the full range of potential legal problems the state law—here prescription—is not applicable, for the deliberate choice of federal law, federally administered, requires that applicable be read in terms of necessity—necessity to fill a significant void or gap.

Huson v. Chevron Oil Co., 430 F.2d 27, 31 (5th Cir. 1970)(internal citations and quotations omitted), aff'd, 404 U.S. 97 (1971). Simply put, "OCSLA extends federal law to the Outer Continental Shelf and borrows adjacent state law as a gap-filler." Texaco Exploration & Prod., Inc. v. AmClyde Engineered Prods. Co., Inc., 448 F.3d 760, 772, *amended on reh'g on different grounds*, 453 F.3d 652 (5th Cir. 2006). The OCSLA choice of law provision states:

> (1) The...laws...of the United States are extended to the subsoil and seabed of the outer Continental Shelf and to all...devices permanently or temporarily attached to the seabed...[for the purpose of resource exploitation]...to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State....
>
> (2)(A) To the extent that they are applicable and not inconsistent with this subchapter or with other Federal laws and regulations...the civil and criminal laws of each adjacent State...are hereby declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structured erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf....

43 U.S.C. § 1333(a)(1), (2)(A). In order for state law to apply as a surrogate to federal law under OCSLA, three requirements must be met:

> (1) The controversy must arise on a situs covered by OCSLA (i.e. the subsoil, seabed, or artificial structures permanently or temporarily attached thereto). (2) Federal maritime law must not apply of its own force. (3) The state law must not be inconsistent with Federal law.

Texaco Exploration, 448 F.3d at 774 (citation omitted).

The parties dispute whether the second requirement is met. In support of his argument that maritime law applies of its own force, the plaintiff merely suggests that "the negligence of the Alliance crane operator while operating the vessel crane constitutes vessel negligence, giving rise to federal admiralty

9

jurisdiction, and with it, the...general maritime law." The plaintiff fails to persuade the Court that his arguments regarding Alliance's alleged negligence have any bearing on the plaintiff's claims against Schlumberger in which the plaintiff alleges that he was injured moving hoses on a fixed platform.

For maritime law to apply of its own force, there must be both a maritime location and a connection to a traditional maritime activity. Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534 (1995). The plaintiff offers no arguments persuading the Court that either element of this test is met here. To the contrary, incidents that occur as a result of offshore drilling operations are generally not maritime in nature. See, e.g., Texaco Exploration, 448 F.3d at 771 ("Texaco's complaint ... arises not from traditionally maritime activities but from the development of the resources on the Outer Continental Shelf ... [t]o the extent that maritime activities surround the construction work underlying the complaint, any connection to maritime law is eclipsed by the construction's connection to the development of the Outer Continental Shelf"); Thibodeaux v. Grasso Prod. Mgmt. Inc., 370 F.3d 486, 493 (5th Cir. 2004)("Both this court and the Supreme Court have expressed the opinion that work commonly performed on oil production platforms is not maritime in nature"); Fruge ex rel. Fruge v. Parker Drilling Co., 337 F.3d 558, 560 (5th

Cir. 2003)(applying Louisiana law in a lawsuit involving personal injuries on a drilling platform on the outer continental shelf off the coast of Louisiana); Hufnagel v. Omega Servs. Indus., Inc., 182 F.3d 340, 349 (5th Cir. 1999)("Construction work on fixed offshore platforms bears no significant relation to traditional maritime activity").[6]

Thus, pursuant to OCSLA, Fornah's negligence claim is governed by the law of Louisiana, the state adjacent to that portion of the seabed where he was injured. The Court is compelled

---

[6] As the Fifth Circuit noted in a recent unpublished opinion:

> The Outer Continental Shelf Lands Act mandates that when disputes arise involving fixed structures erected on the outer continental shelf, the applicable laws of the adjacent state will be applied to the extent not inconsistent with other federal laws and regulations. 42 U.S.C. § 1333(a)(1); see also Rodrigue v. Aetna Cas. & Sur. Co., 395 U.S. 352, 355, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969)("The [Outer Continental Shelf] Lands Act makes it clear that federal law, supplemented by state law of the adjacent State, is to be applied to these artificial islands as though they were federal enclaves in an upland State."). Thus, Louisiana law applies here.

Voces v. Energy Resource Technology, G.O.M., L.L.C., --- Fed.Appx. ---, 2017 WL 3225702, at *3 n.6 (5th Cir. July 28, 2017)(affirming application of Louisiana law to claims arising from the death of a welder who was killed while employed by an independent contractor working to remove the principal company's oil and gas platform located on the outer continental shelf off the coast of Louisiana).

to note that -- regardless of the source of the applicable negligence principles -- the straightforward test is the same.[7]

B. Independent Contractor Negligence

"Every act whatever of man that causes damages to another obliges him by whose fault it happened to repair it." La. Civ. Code art. 2315(A). "Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill." La. Civ. Code art. 2316. Courts employ the duty-risk analysis to determine whether to impose liability based on these broad negligence principles. See Lemann v. Essen Lane Daiquiris, 923 So. 2d 627, 633 (La. 2006). This duty-risk analysis requires a plaintiff seeking to recover for negligence or negligent misrepresentation to prove five elements:

> (1) the defendant had a duty to conform his conduct to a specific standard (the duty element);

---

[7] See Barker v. Hercules Offshore, Inc., 713 F.3d 208, 214 (5 Cir. 2013)(choosing not to decide whether federal, state, or maritime law provides the substantive rule of decision for the plaintiff's OCSLA claim because the result is the same regardless of which law is applied). It is also notable that, although the plaintiff insists that maritime law applies, he concedes that Louisiana law would yield an identical result, and he nevertheless directs the Court to apply precisely the same Louisiana case literature governing the duty of one independent contractor to another independent contractor, invoking Lafont v. Chevron U.S.A., Inc., 593 So. 2d 416 (La.App. 1 Cir. 1991).

(2) the defendant's conduct failed to conform to the appropriate standard (the breach element);

(3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element);

(4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and

(5) the actual damages (the damages element).

Lemann, 923 So.2d at 633 (citation omitted).

Schlumberger submits that it is entitled to judgment as a matter of law dismissing Fornah's negligence claim against it due to the absence of the threshold duty element and the absence of any evidence of breach of any duty. The Court agrees.

Whether a defendant owes a duty is a question of law. Id. With respect to independent contractor duty in particular:

> Independent contractors do not generally owe a duty to protect the employee of another independent contractor beyond the exercise of ordinary care that is owed to the public generally. Lafont v. Chevron, U.S.A., 593 So.2d 416, 420 (La.App. 1 Cir. 1991)(citing 65 C.J.S. Negligence, § 63 (113) (1966)). One independent contractor owes another independent contractor at least "the duty to refrain from gross, willful or wanton negligence, and at the most the duty to refrain from creating an unreasonable risk of harm or a hazardous condition."

McCarroll v. Wood Group Mgmt. Servs., Inc., 561 Fed.Appx. 407, 410 5th Cir. 2014)(unpublished). One independent contractor owes no

duty to another independent contractor's employee where it does not employ, share a contract, or actually supervise the plaintiff. Id. (citing with approval, and noting that Louisiana law is correctly explained, in Parker v. Petroleum Helicopters, Inc., 2002 WL 461655 at *1 (E.D.La. Mar. 20, 2002)).

In considering whether Schlumberger owed a duty to Tetra employee Fornah, the Court first observes that there is no dispute that Schlumberger neither employed Fornah, nor did Schlumberger have a contractual agreement with Fornah's employer, Tetra. Nor is there any evidence in the summary judgment record, Schlumberger submits, indicating that it exercised supervisory authority over Fornah. The Court agrees.

Absent from the record is any evidence indicating that on September 15, 2015 Schlumberger exercised supervisory control over Fornah or tasked him to handle the hoses. According to Schlumberger General Field Specialist Chadwick Bernard, who was the overall supervisor onsite for Schlumberger's portion of the Chevron work, as was customary, the liftboat and Tetra crew assisted with overall operations provided to Chevron, but no Schlumberger employee directed or supervised the activities of the Tetra crew. Fornah offers no countervailing evidence. Fornah himself unequivocally admits that Schlumberger did not directly

14

supervise him on September 15, 2015; he testified during his deposition that his Tetra supervisor, Michael Bergeron, directly ordered Fornah to handle the hoses during the meeting prior to the shift when the incident occurred.[8] There is simply no evidence indicating that Schlumberger assumed supervisory authority over Fornah on the date and time of his alleged accident.

---

[8] Fornah testified:

> Q: ...on that job, were you assigned to a certain task?
>
> A. The hoses.
>
> Q. Okay. Who gave you that assignment?
>
> A. TETRA.
>
> Q. All right.
>
> A. My supervisor.
>
> Q. Which is who? ...
>
> A. TETRA supervisor.
>
> Q. Bergeron?
>
> A. Bergeron, yeah.
>
> Q. So Bergeron told you to handle the hoses for that shift. Right?
>
> A. Yes.
>
> ...
>
> A. At that particular time, I was helping with the hoses.
>
> Q. And you were told to do that by your supervisor, in the 1800 hour meeting?
>
> A. Yes.

Fornah urges that genuine disputes as to material facts preclude summary judgment. But he fails to single out any evidence in the summary judgment record that would support his theory that Schlumberger owed him a duty at the time of the accident, let alone that it breached the duty or that any breach caused his injury. Recognizing that his own testimony undermines his argument that Schlumberger exercised supervisory control over Fornah prior to and during the operations in which Fornah was injured, Fornah attempts to manufacture a factual controversy by submitting the affidavit of former Tetra employee Steven Passman. Notably, Passman was not present in Chevron's Bay Marchand field on September 15, 2015 and he last worked on the Chevron project two months prior to Fornah's incident. Absent personal knowledge of the events leading up to and transpiring on September 15, 2015, Passman's speculative assumptions based on his past experiences with coiled tubing operations are not probative of whether Schlumberger exercised supervisory control over Fornah during the pre-shift meeting, or while he was performing his assigned task (the task Fornah admits was assigned by his Tetra supervisor). Fornah's reliance on Passman's generic, unsubstantiated statements demonstrate a misapprehension of summary judgment procedure.[9] The

---

[9] Fornah argues:

Court underscores that "the nonmoving party cannot defeat summary

judgment with conclusory allegations, unsubstantiated assertions,

---

> [I]t was absolutely unusual for a single rigger to be assigned the task of monitoring and manipulated (sic) the several dozen tubes which were suspended along with the injector head from Alliance's crane. Typical staffing would have required at least two, and possibly three riggers for that task, and on joint coiled tubing operations involving both Tetra and Schlumberger, it was common for riggers from each company to work together as a two or three man team. Despite this, and despite having been involved in pre-operation JSA meetings where staffing would have been addressed, Schlumberger failed to provide support riggers to Fornah and Tetra, failed to ensure that additional personnel were provided to assist Fornah once the JSA assigned only Fornah to the subject task, and failed to properly supervise or stop the operation which left Fornah as the sole rigger for his assigned task.... Fornah would have been supervised during the coiled tubing operation by supervisors of any or all of the team member entities [including Schlumberger]. While it is anticipated that Schlumberger might dispute that account as a general proposition, or as it pertained to this particular instance, it remains in dispute whether contractors other than Tetra were supervising Fornah at the time of his injury. Naturally, the existence of such a dispute precludes the Court from granting the instant Motion.

Fornah's disregard of summary judgment procedure borders on frivolous. Only the existence of a *genuine* dispute as to a material fact precludes summary judgment. A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Fornah offers no concrete evidence in support of his "general proposition" that it is possible that each independent contractor may have, at times, supervised other independent contractor's employees. No reasonable jury could return a verdict for Fornah based on Passman's speculation.

17

or only a scintilla of evidence."  Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007)(internal quotation marks and citation omitted).  "If the evidence is merely colorable . . . or is not significantly probative," summary judgment is appropriate. Anderson, 477 U.S. at 249 (citations omitted).

Fornah offers more "general propositions" in an attempt to defeat summary judgment.  He argues that Chevron and each of its independent contractors "were to act as a team regardless of employer."  This adds nothing to, and finds no support in, the record.  That "everyone works as a team" is standard operating procedure on a plug and abandonment job is of no probative value and stops well short of carrying the plaintiff's burden to show that on the particular day and time of the alleged injury Schlumberger exercised actual supervisory control over him. Finally, Fornah's attempt to anchor Schlumberger liability based on the mere fact that it was Schlumberger's hoses he was manipulating when he was injured also fails.  There is no suggestion, let alone evidence in the record, that the hoses were intrinsically dangerous.  That another person perhaps should have been tasked to help Fornah has no bearing on Schlumberger's motion for summary judgment where, as here, the record indicates that Tetra staffed Fornah on the particular task he was undertaking

18

when he was injured, and there is no evidence that Schlumberger was obliged to staff or supervise Tetra employees for Tetra work.

***

In conclusion, summary judgment in Schlumberger's favor is patently appropriate. The plaintiff has failed to persuade the Court that Schlumberger owed Fornah a duty. Schlumberger supervisor Bernard, who was present on the Chevron job in September 2015, testified that no Schlumberger employee directed or supervised the activities of any Tetra crew, including Fornah. Fornah himself agrees insofar as he testified that, during the pre-shift meeting, his Tetra supervisor tasked him with handling the hoses and that no Schlumberger personnel were in his vicinity on the platform deck at the time he was injured. Passman's generic and unsubstantiated assertions do not call into question the issue of supervision on September 15, 2015 because his speculation is not probative of the events on that day. The record demonstrates that Tetra, not Schlumberger, directed and exercised supervisory control over Fornah at the relevant time. Because there is no genuine controversy to be resolved at trial, Schlumberger is entitled to judgment as a matter of law.[10]

---

[10] Insofar as the plaintiff urged the Court to deny Schlumberger's motion for summary judgment as premature pending

Accordingly, for the foregoing reasons, IT IS ORDERED: that Schlumberger's motion for summary judgment is hereby GRANTED. The plaintiff's claims against Schlumberger are hereby dismissed with prejudice.[11]

New Orleans, Louisiana, October 23rd, 2017

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

"discovery [that could] reveal a continued factual dispute," the request is now moot. The Court continued the hearing on the motion for summary judgment until after the close of discovery. The plaintiff never added any additional evidence into the record.

[11] The Court has been informally advised that Fornah has settled his claims against Chevron, Alliance, and Tetra. Yet the plaintiff has only requested dismissal of his claims without prejudice as to Tetra, Alliance, and the liftboat. As counsel has been advised on more than one occasion, once motions to dismiss without prejudice pending finalization of settlement are filed into the record (and granted by the Court), the motions for summary judgment filed by Chevron, Alliance, and Tetra, and the cross-motion filed by the plaintiff as to Alliance, will be moot. Unless and until counsel formally moves to dismiss all claims against the purportedly settling defendants, those parties must still comply with all of the deadlines in the scheduling order, including submit a jointly-prepared pretrial order in advance of the upcoming pretrial conference. If counsel's failure to file the appropriate dismissal papers could be considered vexatious conduct wasteful of party and Court resources, the Court will not hesitate to issue an order to show cause as to why sanctions should not be imposed pursuant to 28 U.S.C. § 1927.